UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                    )
PACIFIC INDEMNITY COMPANY           )
                                    )
            Plaintiff,              )
v.                                  )        14-CV-13201-LTS
                                    )
JOHN DEMING,                        )
                                    )
            Defendant.              )
_____)

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

October 16, 2015

SOROKIN, J.

This case involves negligence resulting from an overflowed bathtub at a Trinity Place Condominium unit on May 27, 2013. Pacific Indemnity Company ("Pacific") insured the damaged unit and brings this action as the subrogee against John Deming ("Deming") in the amount of $351,159.01. It is undisputed that Deming was negligent in allowing his bathtub to overflow. The sole issue before the Court is whether Pacific's rights to subrogation have been waived. After reviewing the memoranda filed, including supplemental memoranda ordered by the Court, and hearing the competing motions, the Court finds Pacific's rights of subrogation have been waived, and Deming's Motion for Summary Judgment is ALLOWED. Pacific's Cross Motion for Summary Judgment is DENIED.

I.   FACTS

The following facts have been stipulated to by the parties in substantially the following form:

1. On the morning of May 27, 2013, defendant John Deming turned on the bathtub faucet in the master bathroom of Unit 1801, 1 Huntington Avenue, Boston, Massachusetts.

2. After turning on the bathtub John Deming went into a bedroom, laid down and fell asleep. When he awoke he found that the bathtub faucet in the master bathroom that he had turned on prior to falling asleep was still running, and the water was overflowing the tub. The water which overflowed, leaked into condominium units below Unit 1801and damaged Unit 1601.

3. Pacific issued Policy Number 10560357-10 which insured condominium Unit 1601 at 1 Huntington Avenue, Boston, Massachusetts, on May 27, 2013. Pacific made payment under the Policy in the total amount of $351,159.01 for damages to condominium Unit 1601, which were claimed to have resulted from a May 27, 2013, water damage incident. The policy provides in the section called Transfer of Rights that: "All of your rights of recovery will become our rights to the extent of any payment we make under this policy. A covered person will do everything necessary to secure such rights; and do nothing after a loss to prejudice such rights. However, you may waive any rights of recovery from another person or organization for a covered loss in writing before the loss occurs."

4. Deming entered into a lease for the premises located at 1 Huntington Avenue, Boston, MA, Unit 1801. The lease agreement with the Unit Owner contains the following provision in the "Addendum to Lease," Paragraph 7:

   > Lessee acknowledges having received copies of the Master Deed, Condominium Trust, By-Laws and Rules and Regulations of the Trinity Place Condominium, as now in force and effect, and Lessee agrees to fully abide by the terms of same, as applicable to Lessee, as now in force and effect, and as may be amended. The Lessee shall be responsible for and bear all costs and expenses (including reasonable attorney's fees, costs and expenses) relating to any enforcement, eviction or similar proceedings resulting from the failure of the Lessee or occupant or guest of Lessee to comply with all of the applicable provisions and restrictions in the Trinity Place Master Deed, Condominium Trust, By-Laws and the Rules and Regulations, as now in force and effect and as may be amended or modified.

5. In accordance with Lease Addendum Paragraph 7, Deming provided a letter to Condo Trustees, which provided as follows:

   > This letter will evidence our acknowledgement and agreement to comply with all applicable provisions of the Trinity Place Master Deed, Condominium Trust, By-Laws and all Rules and Regulations promulgated pursuant thereto, as now in force and affect, and as same may be amended or modified.

6. The Master Deed provides in Section (g) (II) (Page 12) states that all "rentals, leases… of units shall be subject to the provisions of this Master Deed and of the Declaration of Trust the Condominium Trust and the By-Laws and Rules and Regulations thereto and all tenants, occupants and licensees of Units shall be obligated to observe the provisions this Master Deed, the Declaration of Trust of the Condominium Trust and the By-Laws and Rules and Regulations thereto.

7. The Master Deed Section (p) (Page 21) provides, in part, as follows:

All present and future owners, visitors, servants and occupants of Units, … shall be subject to, and shall comply with, the provisions of this Master Deed as the same may be from time to time amended, the Unit deed, the Declaration of Trust of the condominium Trust and the By-Laws, and the Rules and Regulations of the Condominium Trust as the same may be from time to time amended and the rights, easements, agreements and restrictions of record and all matters set forth on Exhibit A hereto insofar as the same now are, or are in the future, in force and applicable. The acceptance of a deed or conveyance or the entering into occupancy of any Unit. … shall constitute an agreement that the provisions of this Master Deed as the same may be from time to time amended, and the said rights, easements, agreement and restrictions, … and the Unit deed, and the Declaration of Trust of the Condominium Trust and the By-Laws and Rules and Regulations thereto, as the same may be from time to time amended, are accepted and ratified by such owner, visitor, servant or occupant, and all of such provisions shall be deemed and taken to the covenants running with the land and shall bind any person having at any time any interest or estate in such Unit. … or as though such provisions were recited or stipulated at length in each and every deed or conveyance or lease or occupancy agreement hereof. …

8. The By-laws which are Exhibit A to the Declaration of Trust Paragraph at 3E provides: "Each unit owner shall carry insurance at his own expense for his own benefit insuring, inter alia, his carpeting wall coverings other than paint, drapes and other window treatments, furniture, furnishings and other personal property owned by the Unit Owner, and personal liability and loss assessment coverage, provided that all such policies shall contain waivers of subrogation, and further, provided that the liability of the carriers issuing insurance obtained by the Trustees shall not be affected or diminished by reason of any such additional insurance carried by a Unit Owner."

9. The By-laws, Exhibit A to the Declaration of Trust, Paragraph 3.A.(1), provides, in part, as follows:

   3. Insurance

   A. The Trustees shall be required to obtain and maintain, to the extent obtainable, the following insurance:

(1) fire with extended coverage covering other perils normally covered by the "special cause of loss form" on an "all-in" basis (the "Property Insurance"). The Property Insurance shall cover (i) the Building and all other insurable improvements forming part of the common areas and facilities, including the Garage, Health Club, all Storage Rooms, and including the heating equipment and other service machinery, apparatus, equipment and installations in the common areas and facilities, and (ii) including all such portions and elements of the Units, but not including, with respect to Units, and Storage Rooms, (x) any carpeting, wall covering other than paint, drapes and other window treatments, furniture, furnishings, or other personal property (not constituting fixtures) owned by Unit Owners, (y) improvements within a Unit, or Storage Room made subsequent to the Original Construction (as hereinafter defined), or (z) with respect to Commercial Units, trade fixtures and equipment.

* * *

The Property Insurance shall, insofar as practicable, contain waivers of subrogation as to any claim against the Trustees, their agents and employees, Unit Owners, their respective employees, agents and guests …

10. The By-laws at Exhibit A to the Declaration of Trust paragraph 35 provides that: "in the event any Unit Owner shall rent, let, lease… his Unit … the party to whom the same is so rented, leased … shall in a written (i) lease or other written instrument evidencing such arrangement, and (ii) undertaking addressed directly to the Trustees, acknowledge an agree to comply with all applicable provisions of the Master Deed and the Trust, these By-Laws and all Rules and Regulations promulgated pursuant thereto and hereto. An original counterpart of such instruments, signed and acknowledged by such Unit Owner and such party, shall be delivered to the Trustees as a condition precedent to the validity of such arrangement."

11. State Farm issued policy number 21-BA-B621-3 to Deming insuring Unit 1801, 1 Huntington Avenue, Boston, MA. State Farm's policy provides in Section I and Section II – Conditions paragraph 8 that: "An insured may waive in writing before a loss all rights of recovery against a person. If waived, we may require an assignment of rights of recovery for a loss to the extent the payment is made by us."

Doc. 23-1 at 1-5.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). Once a party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). Further, a court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrell, 477 U.S. 317, 322 (1986). The Court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). Even so, the Court is to ignore "conclusory allegations, improbable inferences, and unsupported speculation." Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008) (quoting Medina-Munoz v. R.I. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

    III.    DISCUSSION

In Massachusetts,[1] "the doctrine of subrogation provides that when an insurer pays an insured's claim under its insurance contract, the insurer succeeds to any right of action the insured may have against the parties allegedly responsible for the loss." Liberty Mut. Ins. Co. v. Nat'l Consol. Warehouses, Inc., 609 N.E.2d 1243, 1246 (Mass. App. Ct. 1993) (internal citations and quotation marks omitted); St. Paul Fire & Marine Ins. Co. v. Birch, Steward, Kilash & Birch, LLP, 379 F. Supp. 2d 183 (D. Mass. 2005) (accord). The insurer's rights of subrogation are "no greater than the rights of the insured." Nat'l Consol. Warehouses, Inc. 609 N.E. 2d at 1246. If an insured waived his right to subrogation, that waiver serves to bar the insurer's rights to recover

---

[1] In this diversity case, the parties recognize that Massachusetts law applies.

against the negligent third party. Haemonetics Corp. v. Brophy & Phillips Co., 501 N.E.2d 524 (Mass. App. Ct. 1986) (insured held to have waived right to recover from contractors covered by waiver of subrogation clause to the extent reimbursed by insurance); see also OneBeacon Am. Ins. Co. v. ADT Sec. Servs., No. 07-11464-DPW, 2008 U.S. Dist. LEXIS 56142 (D. Mass. June 13, 2008) (granting summary judgment on insurance company's claim against negligent party where its insured had waived subrogation in his contract). This is because an insurer takes nothing more by way of subrogation than its insured had. Steadfast Ins. Co. v. Forsyth Int'l. Inc., No. 13-12169-GAO, 2014 U.S. Dist. LEXIS 139578 (D. Mass. Sept. 12, 2014) (collecting Massachusetts cases).

Waivers of subrogation serve several "important social goals: encouraging parties to anticipate risks and procure insurance covering those risks, thereby avoiding future litigation, and facilitating and preserving economic relations and activity." Great N. Ins. Co. v. Architectural Env'ts, Inc., 514 F. Supp. 2d 139, 142 (D. Mass. 2007) (internal citation and quotation marks omitted). In collective residential settings, such as condominiums, waivers of subrogation serve the additional goal of preventing litigation between unit owners, and between unit owners and the condominium board. See, e.g., Allstate Indem. Co. Virfra Holdings LLC, No. 15576/2012, 2013 N.Y. Misc. LEXIS 6878 (Sup. Ct. N.Y. July 3, 2013) (discussed below for the reasons stated).

In order to determine whether Pacific's insured waived his right to subrogation and, thus, whether Pacific is bound by any such waiver, the Court looks first to the relevant portions of the Declaration of Trust, Master Deed and Bylaws.[2] The By-laws obligated Pacific's insured to

---

[2] These documents are interpreted in light of well-established rules of contract interpretation. Hancock v. Chambers, No. 13-P-80, 2014 Mass. App. Unpub. LEXIS 325 (Mass. App. Ct. 2014) (condominium's declaration of trust interpreted using contract interpretation principles); Flag

obtain an insurance policy for his unit which "shall" contain a waiver of subrogation.[3] Doc. 23-1 at ¶ 10. This provision is unambiguous, Unit Owners were bound to obtain insurance with subrogation waivers. Similarly, the By-Laws required the Trustees to obtain property insurance on common areas and facilities. Doc. 23-1 at 11. That insurance "shall, insofar as practical, contain waivers of subrogation as to any claim against the Trustees, their agents and employees, Unit Owners, their respective employees, agents and guests." Id. By these provisions, the Unit Owners and the Trustees, as evidenced by the clear and unambiguous language in the By-laws, intended that there would be no litigation between Unit Owners or between Unit Owners and the Trustee for damage to individual units or common areas. Pacific concedes as much. Doc. 24 at 8. Indeed, Pacific makes no argument that as between Unit Owners, the By-laws are unenforceable. Pacific contends that Deming, as a mere tenant, cannot establish any "contractual impediment" to Pacific's claim and cannot avail himself of the waiver of subrogation required by the By-Laws. Doc. 26 at 2. For at least two reasons, Pacific is incorrect.

First, Pacific does not dispute that the By-laws in this case are covenants which run with the land. Doc. 36 at 2; See also Noble v. Murphy, 34 Mass. App. Ct. 452, 459 (1993) (restrictions and obligations in the master deed or by-law "are very much in the nature of covenants running with the land" and will be enforced "absent a showing that they are wholly

---

Wharf, Inc. Hickney, No. 03-2979-C, 2004 Mass. Super. LEXIS 350 (Mass. Sup. Ct. August 2, 2004) (same); Davilas v. Bader, No. 06-1468, 2007 Mass. Super. LEXIS 308 (Mass. Sup. Ct. July 27, 2007) (same); Goldenberg v. Monahan, No. 97-01817, 1999 Mass. Super. Lexis 575 (Mass. Sup. Ct. July 23, 1999) (same).

[3] Waivers of subrogation provisions in insurance policies are valid under Massachusetts law. Metlife Auto & Home v. ADT Sec. Sys., Inc., No.10-10679-GAO, 2011 U.S. Dist. LEXIS 36742 at *6 (D. Mass. March 31, 2011) (citing HaemoneticsCorp. v. Brophy & Phillips Co., Inc., 501 N.E.2d 524 (Mass. App. Ct. 1986)).
.

arbitrary in their application, in violation of public policy, or that they abrogate some fundamental constitutional right") (internal citation and quotation marks omitted); Fox Meadow Condo. Trust v. Feld, No. 13-P-1727, 2014 Mass. App. Unpub. LEXIS 856 (Mass. App. Ct. July 11, 2014) (recognizing that by-laws are covenants running with the land); Trustees of the Prince Condo. Trust v. Prosser, 592 N.E.2d 1301 (Mass. 1992) (unit owner's financial obligations are covenants running with the land).  The law has long recognized that Deming, as a tenant, is in privity of estate. Bronson v. Coffin, 108 Mass. 175, 180 (1871) (recognizing well settled common law that landlord and tenant are in privity of estate). Thus, having privity of estate, he "receives the benefit and assumes the burden of covenants running with the land." 68 Beacon Street, Inc. v. Sohier, 194 N.E. 303, 305 (Mass. 1935) ("An assignee of a lease receives the benefit and assumes the burden of covenants running with the land….This liability depends, however, on privity of estate and continues so long as the assignee holds the estate assigned to him."); Morse v. Aldrich, 36 Mass. 449, 453 (1837) ("When a covenant is said to run with the land it is obviously implied that he who holds the land, whether by descent from the covenantor, or by his express assignment, shall be bound by the covenant" and "in most of the cases on the same subject, the covenants were between lessors and lessees assignee. . . ."). Accordingly, Deming is both bound by and benefits from the waiver of subrogation provision because that provision is one that runs with the land. Pacific's suggestion that the foregoing interpretation reaches visitors, contractors and others is misplaced.  Those person are not in privity of estate and, therefore, are not subject to covenants running with the land. Deming is entitled to the benefit of the waiver of subrogation provision.

  Second, the plain meaning of the By-Laws subjects Deming to the insurance and subrogation waiver imposed on Unit Owners. The By-laws have to be read as a whole and in

accord with well settled principles of contract interpretation. ER Holdings, Inc. v. Norton Co., 735 F. Supp. 1094, 1097 (D. Mass. 1990) ("Under Massachusetts contract law, the by-laws must be read as a whole so that, if possible, provisions are harmonized with one another."); Spartans Indus. v. Pilling Shoe Co., 385 F.2d 495, 499 (1st Cir. 1967) (harmonizing construction preferred even if certain language, if viewed alone, more readily suggests a different reading); Hancock v. Chambers, No. 13-P-80, 2014 Mass. App. Unpub. LEXIS 325 (Mass. App. Ct. March 13, 2014) (condominium documents interpreted using contract interpretation principles); Flag Wharf, Inc. Hickney, 03-2979-C, 2004 Mass. Super. LEXIS 350 (Mass. Sup. Ct. Aug. 2, 2004) (same); Davilas v. Bader, 06-1468, 2007 Mass. Super. LEXIS 308 (Mass. Sup. Ct. July 27, 2007) (same); Goldenberg v. Monahan, No. 97-01817, 1999 Mass. Super. Lexis 575 (Mass. Sup. Ct. July 23, 1999) (same).

The By-laws at paragraph 35 require tenants to comply with, among other things, all "applicable" provisions of the By-laws. Doc. 23-1 at ¶ 12. Plainly then, portions of the By-Laws are applicable to and govern tenants. Otherwise, this provision would serve no purpose. Moreover, numerous provisions of the By-Laws make no mention of tenants, yet are plainly "applicable" to tenants. For example, on page 47 of the By-laws, subsection (e), requires Trustee approval before "Unit Owners" install any lighting on a terrace. Doc. 23-6 at 50. This provision, though it makes no mention of tenants, restricts all tenants, including Deming. It is an "applicable" provision because it regulates the behavior of Unit Owners as lawful residents of Trinity Place. Tenants are also lawful residents of Trinity Place.

For the same reason, the insurance provision (3E of the By-laws) applies to tenants. It has two material provisions: (1) Unit Owners must insure their belongings (e.g. carpets, stereos, drapes etc.), and; (2) they must waive subrogation. The first provision directs Unit Owners to

look to their own insurance for compensation for damage to their own property, rather than to other Unit Owners or the Trustees. The second provision further promotes harmony within Trinity Place and allocates the risk of loss on the injured party's insurer by preventing one Unit Owner's insurer from shifting a loss to another Unit Owner or her insurer even when the other Unit Owner caused the loss.  Paragraph 3E regulates the Unit Owner in his capacity as a lawful resident of the unit.  Thus, its benefits and burdens are "applicable" to tenants including Deming.[4]

Next, Pacific argues that merely because its insured was required to obtain insurance with a waiver of subrogation, does not mean that he actually did obtain insurance with a waiver of subrogation. Doc. 24 at 6-7. According to Pacific, the By-laws requiring Unit Owners to obtain insurance with a subrogation waiver and Pacific's insured's policy which provides that "you may waive any rights of recovery from another person or organization for a covered loss in writing before the loss occurs," does not amount to an actual waiver because the provision is not "self-effectuating." Doc. 24 at 6.  Pacific cites no Massachusetts precedent nor does it cite to precedent from any other jurisdiction for this proposition.  As already noted, there is no dispute that Massachusetts law applies where, as here, jurisdiction is based on diversity of citizenship. Alejandro-Ortiz v. P.R. Elec. Power Auth., 756 F.3d 23, 26-27 (1st Cir. 2014). "In the first instance, this means that the federal court looks to pronouncements of the highest court of the state." Andrew Robinson Intern., Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 51-52 (1st Cir.

---

[4] Pacific argues that applying paragraph 3E to tenants, amounts to wholesale revision of the By-Laws.  It does not. Provisions governing unit owners as owners, such as voting rights, are not "applicable" to tenants and Deming may not vote at the meetings. Second, that Deming and his lessor divided satisfaction of the obligations imposed by paragraph 3E is irrelevant.  Pacific points to nothing prohibiting such a reasonable and sensible arrangement.  That Deming did not secure, himself, all the insurance required by paragraph 3E does not, as Pacific contends, bear any significant force in interpreting the meaning of the By-Laws, which Deming did not draft.

2008). "When that court has not spoken directly to an issue, the federal court must make an informed prophecy as to the state court's likely stance." Id.

      Here, the Unit Owners were required to obtain insurance with a subrogation waiver. They were not merely required to obtain such insurance "to the extent possible," or to use "best efforts," or "if commercially reasonable." Instead, Unit Owners were required, unconditionally, to obtain insurance with a waiver of subrogation. If as Pacific argues, its insured did not actually obtain insurance with a waiver of subrogation, then at best, its insured breached his or her obligation.  The Court's own inquiry has not revealed any analogous case law in Massachusetts which might shed light on the issues raised by this set of circumstances. The Court looks then to other jurisdictions. The Court in this respect finds Virfra, to be analogous, consistent with Massachusetts law, and that a Massachusetts court would follow the court's reasoning therein. Virfra, 2013 N.Y. Misc. LEXIS 6878.  In Virfra, a pipe in a condominium unit froze and burst because a window had been left open for an extended length of time. Damage was sustained to other units. Those unit owners' insurance company paid the damages on behalf of its insureds/unit owners. The insurance company sought to be subrogated to the rights of its insured and brought an action against the negligent unit owner. As in this case, the condominium's by-laws in Virfra provided that all liability insurance policies which the unit owners were required to carry, "shall contain waivers of subrogation."  The insurance company argued that the by-laws did not preclude a subrogation claim because the negligent unit owner could not prove that it had actually obtained insurance with a waiver of subrogation. The court rejected the argument reasoning that "unit owners purchase their units subject to the condominium's declaration and by-laws which, are in essence, an agreement among all of the individual unit owners which set forth the respective rights and obligations of unit owners," and that "[a]s a condition of unit

ownership, purchasers agree to subordinate individual ownership rights to the promotion of the common good." Id. at * 3 (internal citations and quotation marks omitted). Further, as the subrogee, an insured stands in the shoes of the subrogor, "who by virtue of the by-laws, relinquished any right they might otherwise have had to recover damages from the [negligent] owner…irrespective of whether [the unit owner] procured the appropriate insurance. Id. at *6. Finally, the court held that the insurance company was "also barred from maintaining a subrogation action where its own insureds are in breach of a condominium's by-laws requiring them to obtain insurance policies containing waivers of subrogation." Id. (and cases cited). In so holding, the court reasoned that "[t]he purpose of the requirement that both the condominium board and the unit owners obtain coverage with waivers of subrogation provisions is to prevent litigation between unit owners and litigation between unit owners and the condominium board. To permit [the insurance company] to pursue this action against [the negligent unit owner] would frustrate this objective." Id.

      The principles articulated by the Virfra court are wholly consistent with Massachusetts law. Massachusetts recognizes that unit owners purchase their units subject to the master deed, declaration of trust and by-laws. Franklin v. Spadafora, 447 N.E.2d 1244 (Mass. 1983) ("Those who live in condominiums must be willing to give up a certain degree of personal choice in order to promote the welfare of the majority of the owners."); Noble, 34 Mass. App. Ct. at 459 ("[E]ach individual unit owner purchases his unit knowing of and accepting the restrictions to be imposed."). Massachusetts also recognizes that an insurance company stands in the shoes of its insured. Liberty Mut., 609 N.E. 2d at 1246. Because Pacific's insured was bound by the By-laws, so was Pacific. Finally, allowing Pacific to recover from another Unit Owner (or in this case a tenant), because its insured breached his or obligation to obtain insurance containing a waiver of

subrogation, would frustrate the clear intent of the condominium By-laws and allow Pacific to benefit from its insured's breach, an untenable result. See P.R. Tel. Co. v. Telecomm Regulatory Bd. of P.R., 15 F. Supp. 3d 162, 171 (D.P.R. 2014) ("It is axiomatic that a party cannot benefit from its own breach.") (internal citations omitted).

Three more points on the issues raised bear mention. First, Pacific argues Deming and his insurer have not waived subrogation "against anybody" and this "fact serves to highlight the one-sided, unbalanced, and therefore inherently inequitable nature of defendant's argument that he should supposedly be protected against subrogation claims by insurers of Unit Owners, other than his own landlord." Doc. 36 at 3. This is wrong as a matter of fact. The undisputed facts establish that Deming's liability policy contained the same wording as Pacific's policy. Doc. 22 at 4, ¶ 14. It is also incorrect as a matter of law because, for the reasons previously stated, Paragraph 3E binds Deming. Accordingly, there is nothing unfair about the Court's application of the unambiguous language in the By-laws. [5]

Second, in support of its position Pacific seeks to rely on Cmty. Ass'n Underwriters of Am. v. McGillick, No. 09-4891, 2010 U.S. Dist. LEXIS 138198 (D. N.J. December 30, 2010). There, the issue was whether the insurance company could step into the shoes of the Trustees and sue either the unit owners or their tenants. The by-laws in McGillick did not require tenants

---

[5] There were also various ways Pacific could have sought to protect itself, by, among other things, "inserting an exclusion into their policies that permits the insurer to deny coverage if an insured waives the insurer's subrogation rights, (2) raising premiums to offset outlays incurred from the loss of their subrogation rights, (3) investigating whether a potential insured has already waived any subrogation rights, (4) requiring insureds to warrant at the time a policy is issued that the insured has not, and will not, waive the insurers' subrogation rights, and (5) obtaining reinsurance to cover any waiver of subrogation rights." Amica Mut. Ins. v. Bergmeyer Assocs., Civ. Action No. 05-4143-C, 2008 Mass. Super. LEXIS 84 (Mass. Super. Ct. Jan. 4, 2008); see also Steadfast Ins. Co. v. Forsyth Int'l, Inc., No. 13-12169-GAO, 2014 U.S. Dist. LEXIS 139578 (D. Mass. Sept. 12, 2014) (same).

to agree to be bound by the condominium documents and provided only that the tenant "shall be permitted to enjoy the recreational and community facilities of the Association. . . ." Id. at *14. In short, McGillick presented a wholly different case. The Court, as a general matter, is not requiring a condominium association to waive subrogation or to include tenants within any waiver of subrogation. Rather, the Court in this case has merely enforced the unambiguous provisions adopted by the condominium association which, in this case, includes tenants within a waiver of subrogation provision.

Finally, Deming argues he and the Unit Owner/landlord are co-insured's and that Deming should, therefore, benefit from the waiver of subrogation provision in the By-laws. The Court need not reach this issue in light of the discussion and findings set forth.

## CONCLUSION

For the reasons stated, John Deming's' Motion for Summary Judgment, Doc. 23, is ALLOWED and Pacific Indemnity Company's Cross Motion for Summary Judgment, Doc. 26, is DENIED. Judgment shall enter dismissing the action with prejudice with each side to bear their own costs.

SO ORDERED.

   /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge